EDMUND MUNROE *versus* ROBERT C. STICKNEY *& al.*

The report of commissioners to make partition of real estate cannot receive a construction more favorable to the party to whom land is assigned, than the language of a grantor in a deed.

Where, in a partition of mill property, a particular mill is assigned to one of the parties, he takes thereby the land on which the mill stands, with the various easements upon the lands of his co-tenants, necessary to the full and perfect enjoyment of his share.

But his right is to be construed in reference to the existing state of the property, and he acquires, by the partition, no land not covered by the mill and its appendages, at the time of the partition, though such land may be subject to such easements as may be incident to his share.

WRIT OF ENTRY.    ON REPORT of the evidence by MAY, J.

The demandant was the owner of eleven-sixteenths of certain property in Calais, including sundry mills, George Downes of one-sixteenth, and J. M. Robbins of four-sixteenths. Legal partition had been made of three-sixteenths of the eleven held by the plaintiff, by which he became the owner in severalty of one of two saws and one undivided half of the other in the Madison Mill; also partition of three of the four-sixteenths held by Robbins, giving him the Franklin Mill and one undivided half of the stream saw in the Washington Mill; also partition of one-sixteenth held by George Downes, to whom was assigned one-half of the Dyer Mill, the other half having been conveyed to J. Dyer by the plaintiff.

Commissioners appointed to make partition in 1825, on the petition of E. H. Robbins, the then owner of three-sixteenths of the property, assigned to him, amongst other estate, " the

water privilege occupied by the saw mill called Franklin, and marked on the plan No. 7, and one undivided half of the stream saw of the Washington mill, marked on the plan No. 2." This, through several intervening conveyances, became the property of the tenants. They had, however, other rights, derived from Robbins, and also from a deed from the demandant, but not such as to affect this case.

The demandant, in his writ, claimed a described piece of land adjoining the Washington Mill, of which he alleged he had been disseized by the tenant. The tenants, in their brief statement, alleged title in themselves in severalty to a part of the demanded premises, and as tenants in common with the plaintiff and others of the residue.

It appeared in evidence that the tenants had erected an addition to their mills, and had widened the flume above and enlarged the channel below, thereby increasing the quantity of water used in their mills, and had occupied and used the parcel of land demanded in this action.

The case was taken from the jury, and the facts reported for the full Court, to draw such inferences as a jury might draw, and enter such judgment as the law and facts should require.

The case was elaborately argued, and the evidence reviewed and commented upon, by

*J. Granger*, for the demandant, and

*F. A. Pike*, for the tenants.

The opinion of the Court was drawn up by

APPLETON, J.—In the division among the proprietors of certain lands held in common, in the town of Calais, upon the petition of E. H. Robbins, jr., there was, besides other lands, which have no bearing upon the present case, set off to the petitioner, "the water privilege now occupied by the said mill, called the Franklin, and *one undivided half of the stream saw of the Washington mill,* marked on the plan No. 2." The title of Robbins to the half of the stream saw of the Wash-

ington mill is now vested in the tenants, and the inquiry arises, how much land passed by virtue of the language of the report.

The report of the commissioners, by whom partition was made, cannot receive a more favorable construction than if it were the language of the grantor in a deed. No principle is better established, than that land cannot pass as appendant to land. In *Leonard* v. *White*, 7 Mass., 6, SEDGEWICK, J., says, "by the grant of a mill *cum pertinentiis*, the close where the mill is, or the kiln there, does not pass without some further expression." In *Hasty* v. *Johnson*, 3 Greenl., 282, it was decided that a deed of a mill dam and falls, and a right to the road and landing, conveys only an easement in the road and landing. In *Thompson* v. *Androscoggin Bridge*, 5 Greenl., 62, a grant of a saw mill, with a convenient privilege to pile logs, boards and other lumber, conveys only an easement in the land used for piling.

In *Blake* v. *Clark*, 6 Greenl., 436,——" The saw mill, without any further description," says WESTON, J., " was set off by the commissioners appointed to divide the estate, to Thatcher Blake, one of the demandants. Doubtless, by this term, the fee of the land, upon which the mill stood, would pass. Lord COKE enumerates a variety of terms which, being used in a conveyance, carry lands; and he states to what extent. Coke Lit., 146. The land passes, because included in the term used. The word mill, or *molendinum*, is not among those to which he adverts; and probably no authority can be adduced in which it has been held to convey *ex vi termini* any part of the adjoining land. That upon which it stands, may be regarded as including land over and upon which the slip, if it has one, or any other necessary projection from the mill, passes. The term may embrace the free use of the head of water, existing at the time of the conveyance, as also a right of way or any other easement, which has been used with the mill, and which is necessary to its enjoyment. We are not satisfied it can or ought to be further extended." In *Moore* v. *Fletcher*, 16 Maine, 62, the words mill privilege, or privi-

lege of a mill, was held to mean the land on which the mill and its appendages stand, and the land and water actually used with the mill, necessary to its enjoyment. But the conveyance is to be construed with reference to the actual and rightful state of the property at the time of the conveyance. The "conveyance of a mill, or of land on which a mill is situated, carries with it, as incidents of the mill," says BELL, J., in *Dunklee* v. *Wilton Railroad Co.*, 4 Foster, 489, "the right to raise the mill pond, and to flow the lands above, as high as the dam has been usually kept up, and to maintain the dam and flume, which are necessary to support the water at that height, and to support and use the penstocks, aqueducts and channels, which are necessary to convey the water to the mill, and the channels and raceway which are necessary to conduct the water from the mill to the stream, in the manner in which they have been kept and used immediately previous to the conveyance, so far, at least, as the grantor had the right to convey such privilege."

It is apparent, therefore, that, by the partition, Robbins took the land upon which the mill stood, with the various easements upon the lands of his co-tenants necessary to the full and perfect enjoyment of his share, and that the plaintiff cannot injuriously interfere with the rights thus acquired. The plaintiff is entitled to recover the land described in his writ not covered by the mill and its appendages, at the time of the partition, subject to the easements of the tenant in and upon the same.

The words "thence by a line running in a south-westerly direction to the flume of the machine shop," as used in the description, evidently indicate the penstock or conductor of the water, at or near the corner of the machine shop, and not that part of the flume which is further up stream, as the defendants contend.                         *Defendants defaulted.*

TENNEY, C. J., CUTTING, MAY, GOODENOW and KENT, JJ., concurred.