JULIAN E. ROTHERY & others *vs.* JAMES H. MACDONALD.

Plymouth. February 5, 1952. — July 9, 1952.

Present: QUA, C.J., RONAN, WILKINS, SPALDING, & WILLIAMS, JJ.

*Adverse Possession and Prescription. Land Court,* Findings by judge, Variance, Registration proceeding.

Findings of fact contained in a decision by a judge of the Land Court in a registration proceeding must stand on appeal in the absence of a report of the testimony. [239]

Findings by a judge of the Land Court in a registration proceeding, that since a date more than twenty years before the filing of the petition the petitioners or their predecessors in title had rented every summer three cottages located on portions of a disputed area, had "had complete control of . . . [the cottages] and surrounding land, believing they had full right so to do," and "under color of title and in fact" had "exercised complete dominion . . . sufficient to acquire title by adverse possession," were adequate to show title to such portions in the petitioners by adverse possession. [240]

An interruption of a petitioner's adverse possession of certain portions of a tract of land occupied by houses was not shown as matter of law by the placing of a structure on a separable, unoccupied portion of the tract by a respondent claiming the record title to the tract. [240]

An interruption of a petitioner's adverse possession of land was not shown as matter of law by the mere posting of a "notice to prevent easements" under G. L. (Ter. Ed.) c. 187, § 3, somewhere on the land by a respondent claiming the record title thereto. [241–242]

A variance was not shown in a registration proceeding in the Land Court by the fact that the source of the petitioner's title was alleged in the petition to have been a certain deed whereas the proof showed title in him by adverse possession. [242]

PETITION, filed in the Land Court on August 2, 1949.

The case was heard by *Cotton,* J. The respondent appealed from the decision.

*John E. Eaton, Jr.,* for the respondent.

*Robert M. Briggs,* for the petitioners.

QUA, C.J. This is a petition for the registration of title to a tract of land bordering upon, and including a portion of, the beach at Scituate Harbor in Scituate in the county of Plymouth.

The parties are in dispute as to the ownership of à strip about 300 feet in its extreme length and generally about 25 feet in width, located adjoining to, and in large part upon, the upper part of the beach. The trial judge decided in favor of the petitioners except as to a house known in this case as "No. 2," and the land immediately surrounding it, and except also as to a small triangle at the westerly end of the strip, most of which is apparently covered by water at high tide, and as to which there no longer appears to be any controversy. Certain exhibits, the filed plan, and the examiner's report are incorporated in the decision and referred to in the findings, but there is no report of the testimony. The findings of fact contained in the decision must stand. *Marshall* v. *Francis,* 327 Mass. 702, and cases cited.

The judge found in substance that the deed under which the petitioners claim and the deed under which the respondent claims appear to overlap to the extent of the disputed area, but found that he could not place the old division lines upon the ground with any accuracy, and that the "strip in dispute is relatively too narrow to trace back beyond a quarter of a century." He made no attempt to rest his

decision upon any record title, but made findings bearing upon title by adverse possession.

Findings as to the petitioners' title by adverse possession are that upon the disputed strip were four houses in a row, which the judge designated as Nos. 1 to 4 inclusive. Nos. 3 and 4 had been placed upon the strip by a predecessor of the petitioners more than twenty years before the filing of the petition. No. 1 has been on the strip about fifty years, but additions to it were made in 1924, more than twenty years before the filing of the petition. Nos. 1, 3, and 4 were summer cottages, fitted with electric lights, running water, and cesspools. Since 1924 the petitioners or their predecessors in title have rented Nos. 1, 3, and 4 every summer and "had complete control of them and surrounding land, believing they had full right so to do." The judge says, "In other words, I find that since 1924, under color of title and in fact, petitioners and their predecessors in title have exercised complete dominion over the disputed area sufficient to acquire title by adverse possession . . . ." These findings must stand and are adequate to show title to the greater part of the disputed area in the petitioners by adverse possession, unless as matter of law their possession was interrupted by one or both of the events next to be mentioned.

House (or "shack," as the judge once calls it) No. 2 was moved onto the area by the respondent about 1938. He has used it to store moss and for a camp. The judge finds that the placing of No. 2 on the area was "an interruption of the twenty-year possession only as to the area occupied which is where the structure is and half the distance to the sides of the houses east and west, namely houses 1 and 3." This finding also must stand. The evidence may well have shown that actual physical possession by the petitioners of Nos. 1, 3, and 4 continued without interruption and without being affected by the placing of No. 2 on a separable unoccupied part of the area. *Green* v. *Liter*, 8 Cranch, 229, 250–251. *Hunnicutt* v. *Peyton*, 102 U. S. 333, 368–369. *Evitts* v. *Roth*, 61 Texas, 81, 84–85. *Collins* v. *Jones*, 79

S. W. (2d) 175, 177–178 (Tex. Civ. App.). *Earl* v. *Griffith,* 52 Vt. 415. This was a question of fact. *Bowen* v. *Guild,* 130 Mass. 121, 123–124. *Nantucket* v. *Mitchell,* 271 Mass. 62, 67–68.

The second event which the respondent contends interrupted the adverse possession of the petitioners was the posting by him in 1940 of a "notice to prevent easements" under G. L. (Ter. Ed.) c. 187, § 3. This statute, as well as the notice which closely followed its terms, has reference solely to the prevention of the acquisition of easements. The acquisition of an easement by prescription and the acquisition of a title to the fee by adverse possession are two very different conceptions and the end results are vastly different. See *Hancock* v. *Wentworth,* 5 Met. 446, 450; *Morgan* v. *Moore,* 3 Gray, 319, 322–323; *Randall* v. *Sanderson,* 111 Mass. 114, 119; *Randall* v. *Chase,* 133 Mass. 210; *Barker* v. *Kennard,* 226 Mass. 586, 590. The notice was not directed against the possession of the three houses by the petitioners but was directed only against the acquisition of easements by anyone. While the posting of such a notice upon the land is an act of ownership and may constitute evidence bearing upon the continuity of an adverse possession (see *Brickett* v. *Spofford,* 14 Gray, 514), it does not necessarily, as matter of law, interrupt such possession. Not every act by the owner on the land interrupts actual adverse possession. *Bowen* v. *Guild,* 130 Mass. 121. *Proprietors of Jeffries Neck Pasture* v. *Ipswich,* 153 Mass. 42, 45–46. *Cohasset* v. *Moors,* 204 Mass. 173, 178. *Burrows* v. *Gallup,* 32 Conn. 493, 498–499. *Connor* v. *Sullivan,* 40 Conn. 26, 30. *Peabody* v. *Hewett,* 52 Maine, 33, 44, 46. See *Powell* v. *Bagg,* 8 Gray, 441; *Harrison* v. *Dolan,* 172 Mass. 395; 1 Am. Jur., Adverse Possession, § 177. The size of the notice, its exact location and the method of fixation to the land do not appear. So far as appears the notice may not have been posted for more than the six successive days required by the statute. If we assume that it was upon the land pertaining to one of the three houses in possession of

the petitioners, it may have occupied only an infinitesimal portion of that land. The petitioners' possession may have enveloped and flowed around it without the slightest interference. It may have had no effect toward restoring the respondent's possession. Notwithstanding the notice, the judge found that the land was "actually occupied and dominated solely by . . . [the petitioners] for over twenty years." He further found, "In the face of the written notice continued actual possession by petitioners is all the more open and defiant. It contains the essence of a disseizin." These findings must stand.

The respondent contends that there is a variance between the petition and the proof in that the petition contains a statement that the petitioners "obtained title by deed from estate of John J. E. Rothery," while the proof was of title by adverse possession. If this were a variance it could easily be cured by amendment. But we do not think it is a variance. The statement as to the source of the petitioners' title is merely evidentiary in character and provision for such a statement was, we suppose, inserted in the form of petition to facilitate the work of the examiner. The essential allegation is found earlier in the petition and is "That we are the owners in fee simple of a certain parcel of land . . . [describing it]." The important averment is that the petitioners are the owners, not how they obtained title. See G. L. (Ter. Ed.) c. 185, § 28.

*Decision affirmed.*