Rosa A. GIROUX, Petitioner
vs.
CITY OF CHICOPEE
Leonard LAMOTHE, Laurent A. COTE
Respondents

No. 39260

Land Court Department
of the Trial Court
Commonwealth of Massachusetts

October 21, 1981

Fernand R. Ducharme, counsel for plaintiff
Myer Feldman, counsel for defendant
Michael J. Pasterczyk—City of Chicopee

## DECISION

The petitioner, Rosa A. Giroux, filed a petition with the Land Court pursuant to the provisions of G.L. c. 185, § 1(a) to confirm her title to land in Chicopee in the County of Hampden shown on a plan filed with the petition (Chalk A). A copy of the filed plan, reduced to scale, is attached hereto as Exhibit A to this decision. On this exhibit the Court has sketched the three parcels of land which the petitioner claims comprise the locus and as to which there are separate chains of title as to parcels 1 and 2 and no title of record as to parcel 3, the petitioner's claim thereto being based on adverse possession. In addition to the portions of locus included within said three parcels,

the petitioner also claims title to the portion of Beaudry Avenue located within the green tinted lines shown on the plan and denies the rights of all other persons to use it. This area is marked "4" on Exhibit A. The petitioner finally claims the appurtenant right to use that portion of Beaudry Avenue as shown on the plan from the locus to Memorial Drive, a public way.

An objection to allowance of the petition was filed on behalf of the City of Chicopee (the "City"), which claimed an easement to repair and maintain a sanitary sewer in Beaudry Avenue, and this objection ultimately was disposed of by a stipulation between the petitioner and the City. It also appeared during the trial that a portion of the premises had been taken by the City for the nonpayment of taxes and that a pending Superior Court proceeding had been stayed until a decision as to title was reached in this Confirmation case.

The Assessors' plan of locus and surrounding properties shows as assessed to "owners unknown" a large area to the north and east of parcels 1 and 2 and extending farther to the east and south than the petitioner claims (Defendants' Exhibit No. 4). A copy of the applicable portion of the plan is attached hereto as Exhibit B. Beaudry Avenue appears to end at the easterly line of property shown thereon as "Joseph E. Bessette et ux" rather than at the easterly line of lot 25 as it is shown on the filed plan, Chalk A.

An answer also was filed by an abutter, Leonard LaMothe, who claimed the right as appurtenant to his land southerly of locus to use the portion of Beaudry Avenue which the petitioner seeks to eliminate and who, in addition, contended that he owned the fee to a portion of said Avenue free from the rights of others therein. The land claimed by the respondent LaMothe is indicated as "5" on Exhibit A. "5" is situated within "4".

A trial was held at the Land Court on August 12, 1980, at which time it appeared that one Laurent A. Cote, named in the citation but who neither had appeared or answered, might have certain claims to the locus not previously communicated to counsel for LaMothe who was attempting also to represent Mr. Cote. The Court agreed to give Mr. Cote an opportunity to obtain the services of his usual counsel. A conference subsequently was held on September 11, 1980 to inform the Court of the real estate tax status and to arrange to complete the trial in a manner equitable to all. On April 30, 1981, the trial was concluded in the courtroom of the Chicopee District Court, and a view was taken by the Court in the presence of counsel.

No question has been raised as to the petitioner's title to parcels 1 and 2, and it is clear that title to those portions of locus may be confirmed. There is a dispute affecting Beaudry Avenue, however, which peripherally concerns parcel 1. Parcel 1 was conveyed to the petitioner and her late husband, Moise, by Ella M. Shea by deed dated August 20, 1948 and recorded with Hampden County Registry of Deeds Book 1954, Page 461 (to which Registry all recording information hereinafter set forth refers unless the context otherwise requires). (Abstract s. 12 Exhibit No. 1). It is on this piece that the petitioner and her husband built their home as shown on the plan. The deed described the property as lots numbered 21, 22, 23, 24 and 25 on Plan of Lots of Thomas N. Hafey and Louis J. Rigali recorded in Book of Plans 1, Page 132 to which Plan reference may be had for a more particular description. Said lots are 109.67 feet in depth and 50 feet wide. The recorded plan appears at sheet No. 5 of the abstract and shows Oak Street (now Beaudry Avenue) approximately fifty feet in width bisected by a dotted line from the easterly line of lot 25 to a point approximately five hundred feet westerly thereof. From the westerly end of the fifty-foot segment westerly to Willimansett Road, as shown on the recorded plan,

Oak Street is somewhat more than twenty-five feet wide. In the area where the fifty-foot wide street is indicated lots 26 to 38 inclusive, are shown on the southerly side thereof. So far as the abstract indicates (Exhibit No. 1) the developers Hafey and Rigali never acquired title to the southerly twenty-five feet of Beaudry Avenue or the land comprising lots 26 to 38.

The petitioner's chain to the parcel which I have denominated "4", the northerly 25 feet of Beaudry Avenue, commences in 1893, and that of respondent LaMothe commences in 1911 with a deed from Philias Tedero to Philomene Tabonte dated March 30, 1911 and recorded in Book 802, Page 200. (Defendant's Exhibit 2). The respondent Leonard LaMothe and one Yvonne LaMothe (not a party to this proceeding) subsequently acquired the premises which it is claimed include a portion of Beaudry Avenue by a deed from William Burnett, Jr., et ux dated February 3, 1927 and recorded in Book 1340, Page 433 (Defendant's Exhibit No. 1). The three deeds in this respondent's chain all follow the same description which is as follows:

> Beginning at a point on the northerly side of Britton Street, seventy (70) feet easterly from the easterly line of land now or formerly of Joseph Renaud, and thence running easterly along said Britton Street, sixty-four (64) feet to land now or formerly of Louis Theroux; thence northerly along said Theroux's land, to the center of the pond; thence westerly, on the center of the pond, sixty-four (64) feet, more or less, to land now or formerly of one Eugene Homemeyer; thence southerly along said Homemeyer's land, to said Britton Street and place of beginning.

No evidence was introduced as to the location of the pond referred to in the LaMothe description, but the copy of the applicable sheet of the Chicopee Assessors' Plan (Defendant's Exhibit 4) shows the parcel extending into the easterly twenty-five feet of Beaudry Avenue. This does not accord with Defendant's Exhibit No. 1 quoted above where the description bounds sixty-four feet on the center of a pond. No pond is shown on the Assessor's plan, nor is there one now apparent on the ground. However, the view was suggestive of a pond in years gone by at the easterly end of the land claimed by the petitioner, but the Court was not furnished with atlases or other tools to substantiate the appearance of the terrain. The legal description of the LaMothe land dates back at least to 1911, which is subsequent to the recording of Exhibit 2 hereto which locates Beaudry Avenue in the same place as the Assessors' plan now places the northerly point of respondent LaMothe's land. The 1911 deed in turn gives as a title reference an 1892 conveyance, although the instrument itself was not introduced into evidence and therefore cannot figure in the Court's decision.

At the view, the Court observed that from Gladdu Avenue easterly in the area shown as Beaudry Avenue on the filed plan, there is nothing on the ground to suggest the street; there merely is a driveway along the side of the Giroux house which then turns northerly and goes into her yard. The remainder of the area as to which she has record title consists of green grass. Absent any evidence that respondent LaMothe's predecessors in title acquired any grant of an easement from the owners of the fee of Beaudry Avenue, I cannot find any record right appurtenant to this respondent's land to use Beaudry Avenue, and the Assessors' plan confirms this conclusion. Neither was there any evidence that it had any previous use other than access to the petitioner's house. The other abutter, Angela J. Bachand, a witness at the trial,

who is the owner of a lot at the southeasterly corner of Gladdu Avenue and the portion of Beaudry Avenue in question, and the owner now also of the parcel marked Joseph A. Bessette, **et ux** on the Assessors' plan, does not claim any right to use it. As Beaudry Avenue deadends at the easterly line of Lot 25, no purpose would be served by retaining it for the benefit of owners in the subdivision to the west of the locus.[1]

The burden is on the petitioner to establish that she has title sufficient for confirmation. The earliest deed in the abstract in the petitioner's chain of title to parcel 1 does not refer to Oak Street. It is a deed to Thomas N. Hafey and Louis J. Rigali, the developers named in the title of the recorded plan, dated April 8, 1893 and recorded with said Deeds, Book 504, Page 246 (abstract s. 3). Hafey and Regali then conveyed a portion thereof including Parcel 1 and other land to Jeremiah Martie by deed dated May 6, 1896 and recorded in Book 552, Page 21 (abstract s. 4). The lot numbers are not set forth in the deed, arguably because the plan was not recorded until 1899, but the plan shows the conveyance as including lots 10 to 25 inclusive. The depth of the parcel as set forth in the description makes it clear that the fee to the northerly twenty-five feet of Oak Street also is included in this conveyance. The deed contains a so-called condition that "the southerly end of the tract for a distance of twenty-five feet northerly from said southerly land of said Oak Street is to be forever left open as a public highway free from all obstructions for private purposes by the grantee, his heirs and assigns." To properly construe this language, that part of Oak Street shown on the recorded plan southerly of the dotted line must be disregarded, and it is then apparent that the draftsman has reference to what appears on Chalk A as Beaudry Avenue. I do not view the language quoted above as constituting a true condition, which, if it were, would be unenforceable now in any

event, G.L. c. 260, § 31A, but rath: merely an easement to which locus w: subject.

The assessors have construed tl description set forth in the LaMothe dee as protruding into so-called Beaud: Avenue, but it is impossible for the Cou to place the description without add: tional materials not furnished by counse The only deed in the LaMothe chain no before the Court also is later in time th: the 1896 deed to Martie, a predecessor the petitioner.[2] Where, in fact, tl answer to the overlap rests cannot k resolved on this record. Nonetheless, tl abstract shows the petitioner and h predecessors to have had record title the fee of Oak Street (now Beaud: Avenue), subject to the rights of at others entitled therein, at least fro 1896. Absent any convincing evidence support the respondent's position, I fir and rule that the petitioner has borne h burden of proof to establish her title the fee of Beaudry Avenue as shown the filed plan. Mr. LaMothe has n shown any record right to use this wa and no one else claims it or would benefitted thereby. It has in truth remai ed a paper street, in which any rights record have been abandoned. Tit thereto may, therefore, be confirm free of any rights of others to use it.

We move now to the principal issue the case. The petitioner admittedly h no record title to that part of the premis shown on the filed plan northerly of lo 23 to 25 inclusive (and a part of lot 22) e tended to the easterly line of the premis and easterly of lot 25 to said easterly lin

[1] This accords with Registration Case No. 21080 in which an appurtenant right was registered to use Beaudry Avenue only between the premises and Montcalm Street.

[2] The Court notes the possibility that if the LaMothe title were traced back further than 1911, the overlap might be resolved in the respondent's favor. This was not done, however, and the burden, borne by the respondent as to his title, was not met by him.

The petitioner's claim to it is based on adverse possession. It should first be noted that the City in 1978 assessed this land and adjoining land to persons unknown and made a taking for the nonpayment of the tax. (Abstract Supplemental Report s. 46). Despite the pendency of Superior Court proceedings, the City accepted payment by respondent, Laurent A. Cote, who does not appear to have been a party entitled to redeem, G.L. c. 60, § 68 and delivered to him an instrument of redemption. (Abstract Supplemental Report s. 47). Since Cote had no independent title to the land, this approach gained him nothing.

We have no evidence as to the assessment of this part of the property for other years, but it does not appear that it has ever been assessed to the petitioner or her late husand or that they ever paid taxes thereon. While payment of taxes is one indication of adverse possession, failure to do so is not necessarily fatal to the claim if there is sufficient other evidence. Indeed there was testimony that Mr. and Mrs. Giroux learned from the city's representatives that the property was assessed to owners unknown and deliberately set out to acquire title by adverse possession. This course of action does not prevent them from bringing their claims to fruition if all the elements of adverse possession can be established.

The requirements for obtaining title by adverse possession have been set forth repeatedly. There must be "proof of open, adverse, exclusive, continuous and uninterrupted possession under claim of title for the requisite period of twenty years". **Town of Nantucket** v. **Mitchell,** 271 Mass. 62, 68 (1930). Accord: **Ryan** v. **Stavros,** 348 Mass. 251, 262 (1964), **Kershaw** v. **Zecchini,** 342 Mass. 318, 320 (1961), **Ottavia** v. **Savarese,** 338 Mass. 330, 333 (1959), **McDonough** v. **Everett,** 237 Mass. 378, 383-84 (1921).

On all the evidence, I find and rule that the acts of the petitioner and her late husband and those claiming under them were sufficient to establish title by adverse possession to Parcel 3.

There was testimony by the petitioner's nephew, the petitioner, by a neighbor and by a friend, who is also now an abutter, to the effect that commencing in 1950 the petitioner's husband and nephew began the construction of a makeshift fence from the jog in the northerly line of the land shown on the filed plan to the fence of Mr. John G. Costello, a witness at the trial, the southwesterly corner of whose land abuts the northeasterly corner of that claimed by the petitioner. Construction of the fence then continued in a north-south direction to an iron pin and beyond it for an additional twenty-five feet, which point would be the easterly end of the extended southerly line of Beaudry Avenue, as shown on the filed plan. Finally, the fence was continued in an east-west direction to the end of record of Beaudry Avenue. The filed plan, as of May 28, 1976, shows a fence slightly within the property line from the end of the Avenue to the southeasterly corner of the land claimed by the petitioner. As shown on the filed plan, this bars access from a portion of the LaMothe land to Beaudry Avenue but not from all of it. The evidence suggests that it took at least through 1951 for the original fence to be completed. It doesn't appear that the section along the northerly line was the subject of controversy, but the remainder of it was either rebuilt or replaced at least three additional times, the last being in April or May 1980. One of the parties to this proceeding, Mr. Cote, claimed the City of Chicopee had given him the right to cut trees or at least to remove fallen timber in the area, and he disregarded the fences. It did not appear that Mr. LaMothe or his son on his behalf had any part in knocking down any of the Giroux fences. I find and rule that the activities of Mr. Cote were not such as to defeat the claim of the petitioner to exclusivity

of possession, and at the time, of the 1979 tax taking by the City of Chicopee for non-payment of the 1978 taxes, the petitioner had accomplished her goal.

Other testimony as to adverse possession included the placing on behalf of the petitioner of "no trespassing" signs on the fence, the maintenance of a shed (fashioned from a truck body) at least partly on Parcel 3, the clearing of stumps and trees from a portion thereof, family outings thereon, sowing of grass seed thereon and then the planting of a garden which at various times included corn, potatoes, beans, squash, pumpkins and similar crops. There were raspberry bushes in the area south of the jog, and the garden took up a large part of the remainder of the cleared area. The crop in question dictated the area where it was planted. Mr. Costello testified that the Girouxs sold some of the produce at a small vegetable stand near their home. He also testified that much of the area in dispute formerly had been a pond as the description in the LaMothe chain indicates, that there was about a four-foot drop in grade between Parcel 1 and Parcel 3 and that the latter parcel frequently was marshy and wet. The respondents disputed some of the petitioner's evidence, not on the basis of their own ownership, but rather to defeat the Giroux claim.

On all the evidence, however, I find and rule that the petitioner has good record title to Parcels 1, 2 and 4 free from rights of others in that portion of Beaudry Avenue within locus subject to the stipulation with the City of Chicopee, to the lien of any taxes due to the City of Chicopee and to such other matters as appear in the abstract and are not in issue here. I also find and rule, on all the evidence, that the petitioner and her late husband for more than twenty years have maintained, repaired and replaced a fence, or series of fences, around the perimeter of Parcel 3, have posted "no trespassing" signs thereon, have cleared the stumps and trees therefrom, and until 1979 had a large garden thereon. I further find and rule that this was done openly continuously, and notoriously under claim of right adversely to all the world for over twenty years and that accordingly the petitioner has acquired title by adverse possession to Parcel 3.

Decree accordingly.

**Marilyn M. Sullivan**
**Justice**

October 21, 1981